COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Fitzpatrick, Judge Benton and
        Senior Judge Duff
Argued at Alexandria, Virginia


DARRELL S. LEWIS, S/K/A
 DARRELL SCOTT LEWIS
                                        OPINION BY
v.      Record No. 1445-97-4      JUDGE CHARLES H. DUFF
                                       AUGUST 18, 1998
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                   J. Howe Brown, Jr., Judge

        Cynthia A. Bailey (Peter D. Greenspun &
        Associates, P.C., on briefs), for appellant.

        Jeffrey S. Shapiro, Assistant Attorney
        General (Mark L. Earley, Attorney General, on
        brief), for appellee.


     Darrell Scott Lewis (appellant) appeals his conviction for

obtaining property by false pretenses in violation of Code

§ 18.2-178.  Appellant contends the trial court erred by (1)

denying his motion to strike the evidence because the

Commonwealth failed to prove that valid title to the vehicle

passed to appellant; and (2) concluding that temporary title to

the vehicle was sufficient to prove that title to the vehicle

passed to appellant.  Appellant also contends the trial court

erred in refusing to grant various proffered jury instructions.

Finding that the court erred in refusing to instruct the jury

fully regarding the elements of the offense, we reverse the

conviction.

## I.  Facts

Appellant negotiated for the purchase of a Sir Speedy printing franchise in March 1996, but the sale was never completed.  Mary Clemons, the owner of the Sir Speedy franchise that appellant attempted to buy, testified that "by the end of March" she knew the deal was not going to be completed.

On April 3, 1996, appellant met with Norrice Tucker, the finance manager for Brown's Mazda, an automobile dealership.  Appellant told Tucker he was the president of a Sir Speedy printing franchise, that he owned the franchise, that the franchise was going to buy a truck for the company, and that the franchise would pay cash for the truck.  Appellant told Tucker he would fax the buyer's order for the truck to the franchise and that the franchise would provide him with a cashier's check, which appellant would deliver to the dealership.  Tucker testified that appellant "filled out the buyer's order, the promissory note, the credit application, the title and registration form, and the temporary tag form for his thirty-day tags."  Tucker also stated that appellant signed "the title form; registration for the title for the permanent tags."

Tucker did not run a credit report, check appellant's tax identification number, call the State Corporation Commission, or call any vendor credit references concerning appellant's representation that he owned the franchise.  Tucker testified that he relied on appellant's representation that he was the

president and owner of the company.

After completing the paperwork, appellant received the keys to the truck. Tucker testified that, at that point, appellant owned the truck. Tucker stated that appellant said he would pay for the truck within about three days, as soon as he could fax the information to his parent company and they could "overnight" the money to him. The promissory note indicates that appellant was to pay the full purchase price of the truck by April 5, 1996.

The dealership never received any payment from appellant. On May 8, 1996, the police recovered the truck at appellant's residence, and appellant was later convicted of obtaining property by false pretenses.

## II. <u>Sufficiency of the Evidence</u>

Appellant argues that the evidence was insufficient to prove he committed larceny by false pretenses because he obtained only temporary title to the truck and did not obtain actual title to, or ownership of, the truck. Appellant also contends the dealership remained the owner of the truck at all times based on the fact that several documents completed by appellant specified that the dealership retained the right to repossess the truck in the event appellant failed to pay for the vehicle.

"'An essential element of larceny by false pretenses is that both title to and possession of property must pass from the victim to the defendant (or his nominee).' 'The gravamen of the offense . . . is the obtainment of ownership of property

. . . .'"  Baker v. Commonwealth, 225 Va. 192, 194, 300 S.E.2d 788, 789 (1983) (citations omitted).

This case presents an issue of first impression in Virginia. However, other jurisdictions have sustained convictions for theft by false pretenses when the thief took property under a conditional sales contract, and the victim retained legal title to secure the unpaid balance of the purchase price.  See Whitmore v. State, 298 N.W. 194 (Wis. 1941); People v. Aiken, 34 Cal. Rptr. 828 (Cal. Dist. Ct. App. 1963); Franklin v. State, 214 So. 2d 924 (Ala. Ct. App. 1968).

> In Whitmore, the court held:
>> Where . . . goods are sold under a conditional sales contract and the legal title is merely retained for purposes of security, the vendee gets a sufficient property interest to support a conviction of obtaining money by false pretenses provided the other requisites of the offense are present.  As pointed out in Chappell v. State, 25 N.E.2d 999 [(Ind. 1940)], the doctrine that one must obtain title and possession in order to be guilty of the crime of false pretenses cannot mean an absolute title because any title obtained by fraud is voidable and the requirement would make it impossible for the crime to be consummated.

Whitmore, 298 N.W. at 195.  See also Aiken, 34 Cal. Rptr. at 831 ("Our attention has not been called to any authority requiring that in order to support a conviction for theft by false pretenses the title acquired by the fraud be perfect or complete.").

In Franklin, the Alabama Court of Appeals upheld a

- 4 -

conviction for obtaining property by false pretenses where the defendant purchased a car upon signing a conditional sales contract and by trading in a car which was later repossessed. The defendant in <u>Franklin</u> argued that the vendor's reservation of title contained in the sales contract was conclusive of the fact that the defendant only obtained possession of the car, whereas both title and possession must have been obtained by fraud in order to constitute the charged offense. <u>Franklin</u>, 214 So. 2d at 925.

> The court, quoting another Alabama case, stated:
> "The retention of title by the seller is a clause of the contract inserted for his benefit. It is, at most, a form of security for the payment of the purchase money. It is not absolute ownership; for payment of the debt, or tender within a reasonable time, kept good, would divest the seller's title. So far as the rights of the purchasers were concerned, they were the owners of the property, subject only to the right and option of the seller to assert his reserved title, and the security it afforded."

<u>Id.</u> (citation omitted).

We agree with the analyses of these courts. Although appellant signed a Promissory Note and Security Agreement that stated Brown's Mazda had the right to repossess the truck in the event of non-payment, Brown's Mazda retained legal title to the truck only for purposes of security. Brown's Mazda did not retain absolute ownership of the truck once appellant completed the paperwork and obtained delivery of the truck. To adopt appellant's argument "would reward the industrious and designing

thief who, having perpetrated the proper fraud by making false representations, could escape criminal liability as long as the official title remained with the owner as security."  State v. Meado, 472 N.W.2d 567, 571 (Wis. Ct. App. 1991) (holding that the defendant obtained legal title to property where he obtained the vehicle under a lease arrangement by fraudulent representation).

Furthermore, appellant signed and received a temporary certificate of ownership, indicating that the parties agreed that delivery of the certificate of title would occur at a later date.  The back of the certificate states:  "A temporary certificate of ownership issued by a dealer to a purchaser shall expire upon receipt of certificate of title for the vehicle issued by the Department [of Motor Vehicles] . . . ."  The certificate further provides:  "If the dealer fails to produce the certificate of title or certificate of origin or fails to apply for a replacement certificate of title, the purchaser's ownership to the vehicle may terminate and the purchaser shall have the right to return the vehicle to the dealer . . . ."  Thus, the temporary certificate indicates that, during the time period the certificate is in effect, the purchaser "owns" the vehicle.

Moreover, Code § 46.2-1542 supports this interpretation.  This section states:  "The issuance of a temporary certificate of ownership pursuant to this section shall have the effect of vesting ownership to the vehicle in the purchaser for the period that the certificate remains effective."  Appellant argues that

the Commonwealth failed to prove four explicit requirements under Code § 46.2-1542. However, the documents completed by appellant pertaining to his purchase of the truck contained the requisite information. The dealership's license number appears on the temporary certificate of ownership and on the application for title and registration. The application for certificate of title and registration indicates that appellant purchased a new vehicle for which no certificate of title would have been available at the time of purchase. See Code § 46.2-1544. The buyer's order listed the vehicle information, the purchase price, the signature of the salesman, and appellant's signature as the purchaser.

Therefore, we conclude that the property interest conveyed by both the delivery of possession to appellant and the completion of the temporary certificate of ownership in appellant's name was sufficient to support a conviction for larceny by false pretenses in violation of Code § 18.2-178. Accordingly, the trial court did not err in ruling that the temporary certificate of ownership was sufficient to transfer ownership interest to appellant for purposes of this statute; for this reason, the trial court did not err in denying appellant's motion to strike the evidence.

### III.  Jury Instructions

Appellant further argues that the trial court erred in refusing to grant several of his proffered jury instructions. The court refused to give appellant's proffered Instruction H,

which contained the elements of the offense of obtaining property by false pretenses. The trial court granted the Commonwealth's Instruction 2,[1] which also stated in slightly different form the elements of the offense. "A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" Darnell v. Commonwealth, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988) (quoting Swisher v. Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)). "When granted instructions fully and fairly cover a principle of law, a trial court does not abuse its discretion in refusing another instruction relating to the same legal principle." Stockton v.

---

[1]Instruction 2 provided:

The Court instructs the jury that the defendant is charged with the crime of obtaining property by false pretense. The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime:
   (1)  That the defendant made a false
        representation of a past event or existing
        fact; and
   (2)  That the defendant had an intent to defraud
        Brown's Mazda; and
   (3)  That because of the false representation,
        Brown's Mazda gave the defendant possession
        and title to the property; and
   (4)  That the value of the property was over
        $200.00.
If you find from the evidence that the Commonwealth has proved beyond a reasonable doubt each of the above elements of the offense as charged, then you shall find the defendant guilty and not fix his punishment until further instruction is heard by you.
   If you find that the Commonwealth has failed to prove beyond a reasonable doubt any one or more of the elements of the offense, then you shall find the defendant not guilty.

<u>Commonwealth</u>, 227 Va. 124, 145, 314 S.E.2d 371, 384 (1984). Here, the granted Instruction 2 adequately covered the applicable principles of law.

Appellant contends the trial court erred by denying his Instruction K,[2] which defined "material fact" as one which "influences a person to act or not to act." However, the jury was instructed that the dealer must have given appellant possession and title to the vehicle <u>because</u> of the false representation. While it may have been preferable to have granted Instruction K, the jury was told in paragraph three of Instruction 2, that the representation had to be material, i.e., that the dealer acted as he did because of it. Accordingly, we do not find the denial of Instruction K to be reversible error.

However, the trial court also refused to give the jury appellant's proffered Instruction J, which provided:

> Fraudulent intent must be proved by more than a mere showing that Mr. Lewis knowingly provided a false statement to Brown's Mazda.
>
> In addition, the fraudulent intent must have existed at the time the false pretenses were made.

For more than a century, the law has required proof that the intent and the representation occur simultaneously. <u>See</u> <u>Anable v. Commonwealth</u>, 65 Va. (24 Gratt.) 563, 567-68 (1873). The

---

[2]Instruction K provided:

A material fact is one which influences a person to act or not to act.

Supreme Court has unambiguously held that in a prosecution for larceny by false pretenses, the Commonwealth must prove "the fraudulent intent . . . existed at the time the false pretenses were made, by which the property was obtained."  Riegert v. Commonwealth, 218 Va. 511, 518, 237 S.E.2d 803, 808 (1977). Thus, in assessing whether Lewis was guilty of larceny by false pretenses, the jury had to determine whether "the intent to defraud existed at the time the act was committed."  Id.  The jury was not so instructed.  By omitting this element from the jury instructions, the trial court failed to inform the jury "as to the essential elements of the offense."  Darnell, 6 Va. App. at 488, 370 S.E.2d at 719.  We find such failure to be error. Because the jury should have been instructed that the intent to defraud must have existed at the time the false representations were made and because no other instruction addressed this element, we reverse the conviction and remand for further proceedings, if the Commonwealth be so advised.

Reversed and remanded.